PERRY *et al. vs.* McLENDON, sheriff.

1. Judgment on *habeas corpus* being in this state subject to review, especially where the imprisonment is on civil process, is final until reversed; and where the legality of the same cause of imprisonment is twice drawn in question between the same parties by successive writs of *habeas corpus* before the same court, or before different. courts of competent original jurisdiction, the judgment on the former writ may be answered in bar of a discharge under the latter. The matter will be deemed *res adjudicata* as to all points which were necessarily involved in the general question of the legality or illegality of the arrest and detention, whether all of them were actually presented or not   It is sufficient if they might have been and ought to have been presented in the exercise of due diligence.
2. The defendants in "bail trover" cannot, since the adoption of the Code of 1863, procure their discharge on *habeas corpus* sued out by them or at their instance, on the ground that the plaintiff has not met his legal obligations in respect to fees due or to become due the jailor.

*Habeas corpus.* Judgments. Trover. Bail. Before Judge PATE. Laurens Superior Court. October Term, 1878.

Ann Perry, widow of John Perry, Sr., deceased, sixty-five years of age, and Susan Perry, wife of R. R. Perry, and daughter-in-law of the said Ann, eighteen years of age, prayed the writ of *habeas corpus*, alleging that they were illegally restrained of their liberty by virtue of bail trover sued out by Edward Perry as executor of John Perry, Sr., for the following reasons :

1. Because trover will not lie for money unless "the thing" itself is accurately and intelligently described, as in the action of detinue at common law.

2. Because there is no such description in the plaintiff's declaration or bail affidavit.

3. Because trover will not lie against two persons alleged to be in possession of the same chattel at the same time.

4. Because, in the declaration, there is no description by which it can be ascertained what amount or what kind of

money, whether coin or currency, or the kind of coin or currency, each of the defendants to the suit is called upon to produce, so that no finding could be had as to how much either should be held to deliver up.

5. Because there has been no such compliance with the law by plaintiff as is required by section 3419 of the Code, for the original affidavit for bail is not of file in the clerk's office, nor ever was of file therein, nor was any copy thereof attached to the declaration.

6. Because neither the plaintiff in said suit, nor his agent or attorney, has paid at the end of each week of petitioners' confinement, the jail fees which have accrued, as by law required, nor have said fees been paid at all.

The action under which the petitioners were arrested, was complaint by Perry, executor, against them, which alleged that they were in possession of $4,050.00, to-wit: $3,000.00 in gold coin, $1,000.00 in silver, and $50.00 in currency, to which petitioner claimed title; that they, petitioners, refused to deliver the same to plaintiff, or to pay him the profits thereof, wherefore he prayed process, etc.

The bail affidavit by plaintiff, alleged that the above described property was in the possession, custody and control of petitioners; that he has reason to apprehend that it has been, or will be, eloigned or moved away, or that it will not be forthcoming to answer the judgment and execution in the case; that he does verily and *bona fide* claim said personal property as executor; that he makes this affidavit in order that the petitioners may be required to produce and deliver up said property, or give bail, in terms of the law, for the forthcoming of the same.

To this petition the sheriff answered, in substance, as follows:

On July 22, 1878, a certain action of trover and affidavit for bail, filed by Perry, executor, against petitioners, together with copies thereof, were placed in his hands for service. Service was perfected, but the personal property in the action described was not to be found. Petitioners

refusing either to deliver up the property, or to give the bond, were placed in the county jail as prescribed by law. The grounds set forth in the petition have been three times heretofore passed upon by courts having jurisdiction thereof, to-wit: by the court of ordinary, Hon. John T. Duncan presiding, on July 28, 1878; by the superior court of the Oconee circuit, held at Hawkinsville, at chambers, on August 6, 1878, Hon. A. C. Pate presiding; by the court of ordinary aforesaid on the 16th of August. Judgments were rendered upon each of the occasions aforesaid, remanding petitioners to jail, which have never been appealed from, and which are still of force. If error was committed in the rendition of said judgments, it is now too late to correct the same.

Upon the hearing, the proceedings previously had were introduced, as follows: 1st. Writ of *habeas corpns,* issued by the ordinary, July 26, 1878, together with the petition and judgment thereon, the writ having issued on the petition of Ann Perry, alleging that she was illegally restrained because she had no funds in her possession belonging to the executor, as will appear by reference to the will of John Perry, deceased; and further, that money is not the subject of trover and bail.

On July 29, 1878, the ordinary remanded petitioner to jail, holding that the plaintiff had fully complied with §§3418 and 3419 of the Code; that the principle involved in this case was fully covered by 57 *Ga.,* 407; and that gold and silver coin and currency were personal property for which bail trover would lie.

2. Petition of Susan and Ann Perry, sworn to July 29, 1878, to the judge of the superior court of the Oconee circuit, for the writ of *habeas corpus,* alleging the illegality of their imprisonment, upon the ground that gold and silver coin and currency were not the subject of bail trover, with the writ and the judgment thereon. The presiding judge held to the contrary, and remanded the petitioners to jail.

3. Petition to the ordinary for the writ of *habeas corpus,*

alleging illegality of the imprisonment upon substantially the same grounds as are now relied upon, with the writ and the ordinary's judgment thereon. This case was dismissed because the questions made were *res adjudicata*.

The petitioners were again, one of them for the fourth, and the other for the third time, remanded to jail. To this judgment they excepted upon the following grounds :

1. Because contrary to law.

2. Because the judge erred in holding that the questions made were *res adjudicata*.

3. Because the judge erred in overruling each one of the grounds of illegality set forth in the petition.

W. H. WYLLY ; JOHN M. STUBBS ; JAMES J. CONNER, for plaintiffs in error.

ROLLIN A. STANLEY ; J. E. HIGHTOWER, for defendant, cited, on conclusiveness of judgments, Code, §§3577, 2897, 3826, 3829 ; 11 *Ga.*, 265 ; 40 *Ib.*, 67 ; 33 *Ib.*, 561 ; 34 *Ib.*, 99, 101, 253, 583. On description of chattel, 3 Bouv. Inst., 667 ; 9 Bacon's Ab., 668 ; 3 U. S. Dig., 587 ; 14 *Ib.*, 563. Detinue differs from our trover, Code of 1863, §§2967, 3483 ; Code of 1868, §§2974, 3024, 3505, 3023 ; Code of 1873, §3028. On damages, Code, §3065. On bail affidavit, Code, §3418. On form of verdict, Code, §§3563, 3564 ; Smith's L. C., 516. Trover sustained against two—will lie against a corporation, Wheaton's Sel., 2 vol., 1398 ; 28 *Ga.*, 469. On filing affidavit, Code, §§3418, 3419, 3028, 3332, *et seq.* Jail fees to be paid on imprisonment for debt only, Code of 1863, §3333.

BLECKLEY, Justice.

In July, 1878, Ann Perry and Susan Perry were arrested by the sheriff of Laurens county, in a civil case, and imprisoned in the common jail. Afterwards in the same month, Ann petitioned the ordinary for a writ of *habeas corpus*, which was granted. There was a hearing upon the

merits, her imprisonment was adjudged legal, and she was remanded. On the day this judgment was rendered by the ordinary, both Ann and Susan petitioned the judge of the superior court for a writ of *habeas corpus*, which was granted. Upon this writ a hearing was had on the merits, before the judge at chambers, and the imprisonment of both petitioners was adjudged legal, and they were remanded. In August of the same year, both again petitioned the ordinary for a writ of *habeas corpus*, and the same was granted. At the hearing of this third writ, the ordinary adjudged that the petitioners be remanded, resting his judgment on the two preceding adjudications, and dismissing the writ. At the following term of Laurens superior court, in October of the same year, both again petitioned the judge of that court for a writ of *habeas corpus*, and it was granted. The hearing was had during term, and the judge reserved his decision for delivery at chambers. He delivered it accordingly at chambers on the 22d of October, ordering and adjudging that the petitioners be remanded. It is to this last judgment, the judgment rendered on the fourth writ, that the petitioners except. Thus, from July to October, both inclusive, four several and successive writs of *habeas corpus* were issued, heard and determined—the first and third by the ordinary, the second and fourth by the judge of the superior court. The first was upon the petition of Ann Perry alone, and was disposed of by remanding her to custody. Each of the other three issued upon the joint petition of Ann and Susan Perry, and all had the same object—were aimed at one and the same alleged illegal imprisonment. The sheriff of the county was the party respondent in each and every of these three joint cases; he was the only party respondent in the first two of them, and though the jailor was a nominal party with him in the last, the sheriff alone answered for both. In each and every case the custody was admitted, the cause of it as alleged in the petition was avowed (but affirmed in the sheriff's answer to be legal), the imprisoned ladies were pro-

duced, and after a full hearing were remanded by the judgment of the *habeas corpus* court. Successive judgments on the same matter and between the same parties have been rendered, all of them by courts of competent jurisdiction, and each of them either directly adjudicating the imprisonment complained of to be legal, or applying the bar of a previous direct adjudication of that question. In deciding the second case of the whole series (the first before him), the judge of the superior court entered fully into the legal questions involved in the cause of the imprisonment, ruled the same adversely to the petitioners, and, as a consequence, remanded them to the custody from whence they came. That judgment has never been reversed, nor even excepted to. After it was rendered, the third writ in the series was applied for and granted; and after an adverse judgment on the same by the ordinary (which also still stands in full force), the fourth writ was applied for and granted. In the sheriff's answer to this last, he set up as a bar the judgments rendered in the preceding cases, besides again urging the legality of the original cause of arrest and detention. Can there be a doubt that the bar is effective, inasmuch as judgments on *habeas corpus* are, in this state, subject to review—by writ of error, if rendered by the judge of the superior court: by *certiorari*, if rendered by the ordinary? See 24 *Ga.*, 379.

It would seem from the authorities, or some of them, (see Heard on *Habeas Corpus*) that where there is no such power of review, there may be one writ of *habeas corpus* after another *ad infinitum*. But if there can be a review, is there any reason, especially in civil cases, in which the struggle is between party and party, and not with the king or commonwealth on one side, and the subject or citizen on the other, why the first adjudication, if acquiesced in, should not be final and conclusive? We can think of none. Such is the general rule of law in other cases, and why cases of *habeas corpus* should not be included in its application, we cannot perceive or divine. Should the legality

of an imprisonment in a civil case forever be and remain an open question, so long as the restraint continues? Is there no way to close it, and ought there to be none? Is liberty so precious? There is no such indulgence to anything else, not even to life itself. A single judgment will serve to hang a man, if left to stand unreversed. He cannot have trial after trial to ascertain if he is guilty, and determine whether he is to be executed. One complete trial, fair and legal, will carry him out of the world; and why should it not suffice to keep him in jail until some new right to a deliverance has arisen? Is the same alleged right to be investigated over and over, each time afresh, just as if no prior investigation had taken place? Is the grievance, real or supposed, of a prisoner the stone of Sisyphus which courts can never bring to a place of rest? and if called to lift it up the same hill as often as it rolls down, must they comply? Doubtless there is an obligation to issue the writ of *habeas corpus* whenever, and as often as, it may be applied for, provided the petition contains the requisite matter, is in due form, duly authenticated, duly presented, and does not show on its face that the imprisonment, though complained of as illegal, is in fact legal. Code, §4012. But when it appears, on the return or at the hearing, that the legality of the imprisonment has already been adjudicated upon a previous writ between the same parties, by a competent tribunal, the production of that judgment is the end of controversy. Further writs may be applied for and issued, but to each and all of them the one valid and subsisting judgment will be a conclusive answer, as to any and all objections to the legality of the restraint which were embraced in the first petition, or which could and should have been embraced in it. The effect of a judgment cannot be avoided by a difference in the pleadings, when those in the first case could and should have been as full as those in the second, though in fact they were not. No party, plaintiff or defendant, is permitted to stand his case before the court on some of its legs, and if it falls, set

it up again on the rest in a subsequent proceeding, and thus evade the bar of the former judgment. It is the body of a case and not certain of its limbs only, that the final judgment takes hold upon. Whoever brings the legality of an imprisonment into question by writ of *habeas corpus*, should, in the first instance, show as much cause for his attack as he can. He must discharge all his weapons, and not reserve a part of them for use in a future rencounter. He must realize that one defeat will not only terminate the campaign, but end the war.

2. The non-payment of jail fees has not been cause for discharge on *habeas corpus* since the adoption of the Code of 1863, at the instance of the parties confined. Notwithstanding the inhibition on discharge for such cause, is not brought forward in the Code of 1873, but is noted as repealed, it is not repealed, we think, though since the abolition of imprisonment for debt, its application to actual cases is rare. It applies to the present case.

Judgment affirmed.