*George A. H. Harris*, for defendant.

---

## SIMMONS *v.* GEORGIA IRON AND COAL COMPANY.

1. The proceeding by habeas corpus is not, strictly speaking, either a civil or a criminal action, but a summary remedy created for the benefit of a person illegally held in custody by another, and having for its sole object the restoration to liberty of such person. The origin, history, and purpose of the writ of habeas corpus ad subjiciendum discussed.

2. While the writ of habeas corpus is a "writ of right," it does not issue as a matter of course, but only when the application therefor contains allegations which, if true, would authorize the discharge of the person held in custody.

3. The technical rules of pleading are not applicable in a proceeding of this character; and where a writ has been issued and in response thereto the person detained has been brought into court, it is not the proper practice to demur to the petition for want of sufficient allegations. While a motion to quash the writ may be made on this ground, the better practice, when the person detained is before the court, is to inquire into the cause of the restraint and pass such order as the justice of the case requires.

4. No response will satisfy the writ unless accompanied with the body of the person held in custody, or unless a satisfactory reason for his non-production is given; and where in a given instance a writ has been issued and the respondents have appeared at the time appointed in the writ, and a hearing is had, it will be presumed, nothing to the contrary appearing, that the person claimed to be illegally restrained of his liberty was before the court at that time.

5. Although a judge may have no authority to issue a writ directed to a person holding another in custody beyond certain territorial limits, yet where he does issue the writ thus directed, and the respondent obeys its mandate by producing into court the person detained, a plea that the court had no jurisdiction to issue the writ should be overruled and the cause of the detention inquired into.

6. The judge of a city court, the jurisdiction of which extends over the whole of the county in which it is located, has power to grant the writ directed to any person having another in illegal custody within the territorial limits of the county, and to make it returnable to any place within the county, notwithstanding such person may be a non-resident of the county. ·

7. The fact that the application may show that the person held in custody is detained under a void sentence of the superior court, would not prevent the judge of a city court having power to grant the writ from taking jurisdiction of the proceeding.

8. Where four sentences in misdemeanor cases are imposed against the same person on the same day, each one after the first providing that the term of service shall begin to run at the expiration of the time fixed by those preceding, the convict is not entitled to be discharged from custody until he has served the aggregate time fixed by the four sentences.

9. Convicts can not be worked in private chain-gangs controlled by private individuals ; and a convict confined on such a chain-gang should be released from the custody of the individuals controlling it and remanded to the custody of the authorities lawfully entitled thereto.

10. The fact that the averments of a petition for habeas corpus, which it is claimed show the detention to be illegal, are made " on information and belief," is no ground for quashing the writ, or refusing to issue it.    More especially is this so where the application is made by a person other than the one alleged to be restrained of his liberty.

11. While there is no precedent for issuing a writ of habeas corpus directed to a corporation as such, yet where a writ is directed to a corporation, " and its officers, agents, and employees," and one or more of such persons respond by producing the body of the person detained, the irregularity in the address of the writ will be no ground for refusing to investigate the cause of the detention.    The practice, however, of thus issuing the writ is not to be commended, but it should be directed to the individual having the actual physical custody and control of the person detained ; and if this can not readily be ascertained, then to some one who is manifestly a party to the detention and aids and abets it.

Argued February 17, — Decided March 13, 1903.

Petition for habeas corpus.    Before Judge Foute.    City court of Cartersville.    December 31, 1902.

*James B. Conyers,* for plaintiff.

*John W. & Paul F. Akin,* for defendant.

COBB, J.    Winnie Simmons presented to the judge of the city court of Cartersville a petition for habeas corpus, alleging substantially the following :    Petitioner's husband, Wess Simmons, is now, and has been for more than twelve months past, confined in a chain-gang in Bartow county, which is maintained and operated, as your petitioner is informed, believes, and alleges, by the Georgia Iron and Coal Company, a private corporation doing a mining business in that county.    On November 8, 1901, four separate misdemeanor

sentences were pronounced against petitioner's husband by the superior court of Bartow county, the first two imposing an alternative sentence of twelve months labor in the chain-gang on the public works, and the last two each imposing an alternative of six months labor in such chain-gang.      Each sentence after the first provided that it was to commence at the expiration of the terms fixed in the previous sentences.     Being unable to pay the fines imposed in the judgments referred to, the convict was, on November 9, delivered to the corporation above named, which corporation, by its agents, servants, and employees, placed him in a chain-gang, where he has been confined at hard labor, except when wholly unable to work. ,   Petitioner does not know of her own knowledge whether this chain-gang is a legal place of confinement or not, but, upon information and belief, alleges that the county commissioners, acting through the solicitor-general, made a contract with the corporation, by which it was to pay the commissioners a stated sum per month as hire for the convict, for a term of three years from his reception by the corporation under the several sentences of the court referred to.     Petitioner also alleges, upon information and belief, that the servants, agents, and employees controlling and operating the chain-gang are in the employ of the corporation and are paid for their services by it; and that her husband is not now confined in a chain-gang on the public works as the law contemplates, but that he is illegally detained and confined in a chain-gang unauthorized by the laws of Georgia, under a contract made as aforesaid, which contract, petitioner alleges upon information and belief, is illegal and unauthorized by law.     Petitioner also alleges, upon information and belief, that the superior court of Bartow county had no legal right to suspend the operation of three of the sentences pronounced against her husband ; that while the Penal Code, § 1041 authorizes this to be done in felony cases, there is no authority of law for such action in misdemeanor offenses. Petitioner alleges that the sentences referred to run concurrently, and that after the lapse of twelve months all are satisfied.     Petitioner does not attach a copy of the contract with the corporation and the county commissioners, because she does not know whether such contract was in writing or parol.   The prayer is that the writ of habeas corpus be issued, directed to the " Georgia Iron and Coal Company, a corporation as aforesaid, and its officers, agents, and employees, who

have the charge and custody of said Wess Simmons." The writ was issued and directed to the corporation, "its officers, agents, and employees." It was served upon a named person as superintendent and agent of the corporation. At the time set for a hearing the respondents appeared and filed what they termed a demurrer to the petition, on the grounds, that the judge of the city court had no jurisdiction to hear and determine the petition or to grant the relief prayed for; that "no cause of action is set forth in the petition;" no jurisdiction of "this defendant" is shown by the petition. The petitioner objected to the consideration of the demurrer, on the ground that, the writ having been issued, it was incumbent upon the respondents to file an answer to the same, and that the petition was not subject to attack by demurrer. The judge overruled this objection, heard argument on the demurrer, and sustained the same. To these rulings the petitioner excepted.

1. Questions growing out of an alleged illegal restraint of a person's liberty are always questions of much delicacy and importance. They impose upon the judiciary the duty of instituting a careful and painstaking investigation into the cause of the detention, and, if it be shown to be illegal, the courts should not be too astute in finding technical objections to the manner in which the legality of the restraint is called in question. On account of the character and importance of the questions made by the record, it is necessary to make some inquiry into the nature and object of the writ of habeas corpus, and the proceedings upon which it is issued. Many are accustomed to regard the writ as almost obsolete and of little practical value; and doubtless this results from the fact that it is so seldom called into operation. But the writ is as much a palladium of liberty to-day as it was during the abuses existing in the days of the ancient English sovereigns. It is to the credit of an advanced civilization that the necessity for the issuance of the writ rarely ever arises, but the constitution of this State declares that the privilege of the writ shall never be suspended, and it stands to-day, as it did in the days of King Charles, to protect and safeguard the liberty of the citizen. The origin of the writ has been left in some obscurity. There is ample evidence, however, that it was in use before the days of Magna Charta. See 2 Spell. Ex. Rel. §§ 1154, 1157; 15 Am. & Eng. Enc. L. (2d ed.) 128, 129. The common-law writ became so little respected that it no longer af-

forded real or substantial benefits to English subjects, and it was not until after the passage of the statute 31 Charles II, known as the habeas corpus act, that the writ came to be thoroughly recognized in its fullest scope. This act, by virtue of our adopting statute, became a part of the law of this State. See Schley's Dig. 262; Cobb's Dig. 1131. Numerous changes have since been made in the act by statutes passed since its adoption. See Cobb's Dig. 543; Penal Code, § 1210 et seq. The writ with which we are now dealing was the one known to the common law as the habeas corpus ad subjiciendum, and was issued in cases of illegal detention. 3 Bl. Com. 131. The proceeding by habeas corpus was, strictly speaking, neither a civil nor criminal *action*. "It was not a proceeding in a suit, but was a summary application by the person detained. No party to the proceeding was necessarily before or represented before the judge, except the person detaining, and that person only because he had the custody of the applicant, and was bound to bring him before the judge to explain and justify, if he could, the fact of imprisonment. It was, as Lord Coke described it, festinum remedium." Church, Hab. Cor. § 88, p. 140. See also, in this connection, 3 Bl. Com. 131; 2 Spell. Ex. Rel. § 1152. The act of Charles II certainly did not change the nature of the proceeding or the practice of the courts in granting the writ. See Church, Hab. Cor. § 100. On the contrary, it was designed to correct the imperfections of the common-law writ and make it a speedy remedy for a person to regain his liberty when illegally detained by another. It seems to have been doubted whether, under the common law, the writ could be issued in vacation; and this was doubtless one of the reasons which brought about the passage of the act. See, in this connection, 3 Bl. Com. 131; 4 Bacon's Ab. 568, 593; Church, Hab. Cor. § 171; 15 Am. & Eng. Enc. L. (2d ed.) 129.

The great purpose of this act, therefore, was to make the remedy speedy and effective. The proceeding is sometimes characterized as a "cause" or "action," but erroneously so; and it has been called a civil or criminal proceeding, according to whether the person is held in custody on a criminal charge or by private restraint. While instances may arise where it is important to determine whether it is a civil or criminal proceeding, it can never be accurately characterized as a technical *suit* or *action*. See, in this con-

nection, 15 Am. & Eng. Enc. L. 157 – 8; 2 Spell. Ex. Rel. § 1161.
It may be analogized to a proceeding in rem, and is instituted for
the sole purpose of having the person restrained of his liberty pro-
duced before the judge, in order that the cause of his detention
may be inquired into and his status fixed. The person to whom
the writ is directed makes response to the *writ*, not to the *petition*.
9 Enc. P. & P. 1035. When an answer is made to the writ, the
responsibility of the respondent ceases. See, in this connection,
Barth *v.* Clise, 79 U. S. (12 Wall.) 400. The court passes upon
all questions, both of law and fact, in a summary way. The per-
son restrained is the central figure in the transaction. The pro-
ceeding is instituted solely for his benefit. It is not designed to
obtain redress against anybody, and no judgment can be entered
against anybody. There is no plaintiff and no defendant, and hence
there is no *suit* in the technical sense. The judgment simply fixes
the status of the person for whose benefit the writ was issued;
and while any one disobeying the judgment may be dealt with as
for a contempt, the judgment does not fix the rights of any one
interested, further than to declare that the person detained must
be restored to liberty. The respondent, in his answer to the writ,
seeks simply to justify his conduct and relieve himself from the
imputation of having imprisoned without lawful authority a person
entitled to his liberty. He comes to no issue with the applicant
for the writ. He answers the writ. The applicant may traverse
the answer and thus take issue with the respondent as to the truth
or legal effect of the facts which he sets up. If upon an investi-
gation into the matter it appears that the detention was without
color of authority, the person detained will, of course, be discharged,
and he may bring a civil action for damages, or prosecute the per-
son by whom he was restrained of his liberty for false imprison-
ment. But the proceeding itself is not in any sense a suit between
the applicant and the respondent.

Our habeas corpus law, as above stated, is made up partly of
the common law and partly of the statute of Charles II, with the
changes that have been made from time to time by the General
Assembly. Such portions of this law as are material in the pres-
ent investigation will be referred to in the appropriate places. It
is certain that there is nothing in the law which takes away any
of the substantial benefits of the English statute, or modifies it in
any material respect.

2. But while the writ of habeas corpus is a "writ of right," it did not, either under the common law or the statute of Charles II, issue as a matter of course, but only on probable cause shown. It was, under the English practice, incumbent upon the party moving for the writ to make a prima facie showing under oath, authorizing the discharge of the person restrained of his liberty. 4 Bacon's Ab. 568; 1 Tidd's Pr. 346. And this is also the rule in the courts of America. Church, Hab. Cor. § 92; 25 Am. Dig. (Cen. ed.) cols. 995-6, § 55; 2 Spell. Ex. Rel. §§ 1193, 1318. The Penal Code, § 1211, provides how such an application shall be made, and what shall be its contents; and the application must state, among other things, "the cause or pretense of the restraint; and if under pretext of legal process," a copy of the process, if possible, must be annexed to the petition; and the application must contain "a distinct averment of the alleged illegality in the restraint, or the reason why the writ of habeas corpus is sought." When Judge Montgomery, in *Broomhead* v. *Chisolm*, 47 *Ga.* 392, used the language that every judge whose duty it is to grant the writ "must do so when any person shall apply for it," he of course did not mean to say that the application need not state sufficient facts to authorize the writ to issue; and the application with which the learned judge was dealing in that case unquestionably met the requirements of the rule just referred to. Mr. Justice Bleckley, in *Perry* v. *McLendon*, 62 *Ga.* 604, says that the writ should be issued, "provided the petition contains the requisite matter, is in due form, duly authenticated, duly presented, and does not show on its face that the imprisonment, though complained of as illegal, is in fact legal." It is therefore the duty of the court in every case, before issuing the writ, to inspect the application to see if it contains sufficient averments and is properly verified. If it lacks these essential requisites, he should decline to issue the writ. If it does not, it is "his *duty* to grant it," and for a failure to do so the law imposes a penalty upon him. Penal Code, § 1234. The provisions of the section just cited, as to the imposition of a penalty, and the character of the penalty, are in substance what was provided in the act of Charles II. Cobb's Dig. 1131, § 10; Schley's Dig. 275.

3. But we know of no law which authorizes either the person against whom the writ is prayed, or any one else, to come into court and object to the issuance of the writ. There is no precedent

for an objection of this character. · It is a matter to be determined solely by the judge.   And even after the writ has issued and the respondent has appeared in answer to it, the sufficiency of the petition can not be tested by a demurrer, though it seems that a motion may be made to quash the writ because of insufficient averments in the petition.   9 Enc. P. & P. 1021; 2 Spell. Ex. Rel. § 1335.   Mr. Church, however, in his work on Habeas Corpus (§ 156, p. 241), states that a motion was made to quash the writ, on the ground that it had been issued improvidently, before Justice Wilson of the Queen's Bench in Canada, and the justice stated: "Even if it were clear to me that I have the power, I do not know that I would exercise it now that the writ has been returned and filed, and the prisoner is here awaiting my judgment." See In re Ross, 3 P. R. (Can.) 301.   So, states the author, instead of quashing the writ on motion made for that purpose, he discharged the prisoner on defects in the warrant returned.   This practice commends itself very strongly to our minds.   When the writ has been answered, and the prisoner produced, why fritter away his rights with technical niceties and rules of pleading?   Let it be granted that the writ ought not to be issued until probable cause is shown, when it is issued, even though improvidently, if it accomplishes its purpose and results in the production of the person detained, why remand to the place whence he came a man deprived of his liberty without any color of legal authority, because, forsooth, the petition is defective in form or even in substance? The writ of habeas corpus is a writ of right, and its beneficent effects ought not to be dissipated by subtle objections and technical niceties.   Of course, if the petition clearly shows on its face that the detention is lawful, there is nothing to investigate.   But if it is merely lacking in that fulness which the statute and good pleading require, and shows that a claim is made by the applicant that the detention is illegal, the writ ought not to be quashed after the person detained has been brought into court, but an inquiry into the cause of the detention ought to be instituted.   Especially ought this rule to be applied where the petition is made by a person other than the party restrained of his liberty.   Let the party detained be given an opportunity to show that his detention is not lawful. It may be said that in the administration of the law due forms must be observed.   This is true, but this writ was framed to meet

an emergency and for a special purpose, was intended to be used in a summary and speedy manner, and its beneficent purposes and wholesome effects must not be lessened by legal refinements. See, in this connection, *Broomhead* v. *Chisolm*, 47 *Ga.* 390.

4. As will be noted, the argument just made presupposes that the person alleged to be illegally restrained of his liberty is produced into court in response to the writ. In the present case the record does not disclose affirmatively that the person held in custody was brought into court. But the record does show that the writ was issued, that the party served with the writ appeared, and that a hearing was had. Under the common law no answer would satisfy the writ "but to return the cause with paratum habeo corpus, etc." Church, Hab. Cor. § 107; 4 Bacon's Ab. 570; 2 Spell. Ex. Rel. §§ 1322, 1329. As shown above, the statute of Charles II did not change the practice and procedure which was of force under the common law; and, so far as respects the matter just referred to, no change has been made by any of the statutes of this State. And hence it is, that as the answer of the respondent must be made to the writ, his return will be insufficient unless he produces therewith the body of the person alleged to be in his custody, if it be in his power to do so. It is therefore the duty of the judge to decline to proceed with the hearing until the body of the person is produced or a satisfactory reason given why it could not be done. While no formal answer was made to the writ in the present proceeding, there was a hearing on the writ. The respondents appeared and filed what they called a demurrer to the petition; and we think we are bound to presume that the mandate of the writ — that the body be produced — was complied with before the respondents were heard to urge any reasons why the prisoner ought not to be discharged on the showing made by the applicant. Until the prisoner was produced, the court had no authority to hear from the respondents, but should have issued an alias writ, or an attachment for contempt, in its discretion. See, in this connection, 2 Spell. Ex. Rel. § 1338. Having entered into a hearing, it is to be presumed that the proceeding had reached a stage where it was proper to hear from the respondents, nothing to the contrary appearing in the record.

5. But it may be said that the rule, that after the prisoner is produced the cause of his detention should be inquired into, al-

though the writ may have been improperly or improvidently issued, ought not to be applied to an objection made to the jurisdiction of the court. But this is exactly the character of objection to which it was applied in *Broomhead* v. *Chisolm*, supra. In that case a petition for habeas corpus was presented to the judge of the city court of Atlanta, and he issued the writ. The person to whom it was directed answered by producing the person held in custody by him, and set up that such person was being detained by him beyond the city limits, and that for this reason the judge had no jurisdiction in the premises. In reply to the plea of jurisdiction the court, through Judge Montgomery, said : " The respondent, before answering it, brought the person held in custody within the city limits, but claimed in his answer that he only brought him in in response to the writ, and therefore the judge had no jurisdiction. What might have been the decision had the respondent declined to bring the prisoner within the city we do not say. Having brought him before the judge in obedience to the writ, we are not disposed to scan too critically the mode in which he got there, but hold that, being there, the judge had authority to pass such order as the nature of the case required." The plain meaning of this decision is that, even conceding that the judge had no jurisdiction to issue the writ in the first instance, yet when he did so and the respondent saw fit to answer and produce the person held in custody, the judge had power, and it was his duty, to inquire into the detention and discharge the person, if sufficient reason for so doing was made to appear. This decision was by a unanimous court, the point was directly made, and it is controlling authority on the question.

6. We think the judge of the city court had jurisdiction to issue the writ. The petition alleges that Simmons, the person alleged to have been illegally detained, was held in custody by the respondent, a corporation, its officers and employees, in Bartow county. The principal office of the respondent corporation is not situated in Bartow county, where the detention occurred. It is to be noticed that the so-called demurrer does not point out why the judge of the city court had no jurisdiction. But waiving these technical objections, the question is, could the judge of the city court of Cartersville issue a writ of habeas corpus to a non-resident of Bartow county, to bring up a person unlawfully restrained of his liberty in Bartow county under a sentence imposed by a judge of the su-

perior court. A city court for Bartow county was created by an act of 1885, with jurisdiction over the whole county; and by section 23 of the act it was provided that "the judge of said city court shall have authority to grant writs of habeas corpus, except when the person detained of his liberty is charged with a capital felony." Acts 1884–5, p. 487. The statutory right of the judge of that court to issue the writ of habeas corpus must be derived solely from this act, as it is to be observed that the Penal Code, § 1212, provides that the petition may be presented to the judge " of a city court established on the recommendation of a grand jury," or to the judge of the superior court, making no mention of judges of courts of the character of the city court of Cartersville. So that, if we are to be guided by the jurisdiction of the city court, in fixing the territorial jurisdiction of the judge of that court in habeas corpus proceedings, the judge manifestly had jurisdiction in this proceeding, so far as mere geographical limits are concerned. The place of detention fixes the jurisdiction of the habeas corpus judge, without reference to the residence of the person detaining. Expressions will be found scattered through our reports, to the effect that, when passing upon a petition for habeas corpus, the judge sits as a habeas corpus judge and as a special habeas corpus court, separate and distinct from the other court over which he presides at other times. See, in this connection, *Livingston* v. *Livingston*, 24 *Ga.* 379, 383; *Perry* v. *McLendon*, 62 *Ga.* 603; *Moore* v. *Roberson*, 63 *Ga.* 506; *Southern Express Co.* v. *Lynch*, 65 *Ga.* 245. In *Moore* v. *Roberson*, supra, it was held that jurisdiction to issue writs of habeas corpus was conferred by the code upon the ordinary, and not upon the court of ordinary; and that as in such a proceeding the ordinary acts as a " special habeas corpus court," the constitution of 1877, restricting the jurisdiction of courts of ordinary to " county matters," did not withdraw from the ordinary the statutory power to grant the writ of habeas corpus. But in *Barranger* v. *Baum*, 103 *Ga.* 471, some of the previous decisions are referred to, and it is distinctly ruled that there is no such thing in this State as a habeas corpus court eo nomine; and that when a judge of a superior court passes upon an application for habeas corpus, he is presiding in a cause pending in his court, and a writ of error will lie to the Supreme Court, under the Civil Code, § 5527. We will not now undertake to reconcile any apparent conflict in the

two decisions last cited, even if the conflict is only apparent. We are satisfied that when a statute creates a court with jurisdiction over a given territory, and confers upon the judge of that court power to grant the writ of habeas corpus, the right to issue the writ is coextensive with the territorial jurisdiction of the court in other matters.

There is no general law fixing the jurisdiction of a judge of a court of the character of the city court of Cartersville when sitting as a habeas corpus judge. The jurisdiction of a judge of the superior court is fixed by such a law, and extends over the territorial limits of his circuit, and a writ granted by him may be made returnable to any county in his circuit. Penal Code, § 1212. The proceedings should be recorded in the county where the detention occurred. See Penal Code, § 1232. Under the common law, the writ was treated as a prerogative writ and issued to any part of the king's dominions. Being a prerogative writ, it was not subject to the ordinary rules of writs " between party and party." 4 Bacon's Ab. 570; 3 Bl. Com. 131; 15 Am. & Eng. Enc. L. (2d ed.) 133. By the statute of Charles II, the writ was issued by the chancellor, lord-keeper, the justices of either bench, and the barons of the exchequer, and ran to any place in the kingdom, or Wales, or the town of Berwick, and the islands of Jersey and Guernsey. See Schley's Dig. 267, 277; Cobb's Dig. 1131, 1133. So that, if we are to look to the section of the Penal Code and to the English law for an analogy, it would seem to be clear that where the territorial jurisdiction of a judge to grant a writ of habeas corpus is not defined by statute, it is necessarily to be implied that the power extended, at least, to the geographical limits of the court over which he presided, and that the writ may be made returnable to any place within such jurisdiction. " There is no question of the authority of a State court, or judge who is authorized by the laws of the State, to issue the writ of habeas corpus, to issue it in any case where the party is imprisoned within its territorial limits." Church, Hab. Cor. § 108. See also 9 Enc. P. &. P. 1025, and cases cited; State *v.* Glenn, 54 Md. 572, where it was held that as the constitution of that State provided that the privilege of the writ should never be suspended, and that the judges should be the conservators of the peace throughout the State, the legislature could not restrict the power of the circuit judges to grant the writ to their circuits,

but it extended throughout the limits of the State. It has been held that the writ may be issued by judges of courts of general common-law jurisdiction, though no authority is given by statute. 15 Am. & Eng. Enc. L. (2d ed.) 145.

7. It is argued that the judge had no power to issue the writ, because it appeared that Simmons was held in custody by virtue of a sentence imposed by the superior court, but that the application should have been made to the judge of that court, to avoid an unseemly interference on the part of the city-court judge in a matter over which the judge of a court of higher dignity than his court had previously had control. As stated above, the power to grant the writ was conferred upon the judge of the city court, not upon the court; and although the proceeding was to be treated as one pending in the city court, it was nevertheless passed upon by Judge Foute as a habeas corpus judge, and not as city-court judge. We are not aware of any difference in rank among the various judges of the State when acting as habeas corpus judges ; and we see no reason, in principle, why one such a judge presiding in a city court might not discharge a person wrongfully held in custody under a void sentence imposed by the superior court. The sole question to be inquired into is whether the detention is illegal; and if it is, the prisoner ought to be discharged, without regard to who or what was the direct or indirect cause of the detention. The remarks of Judge Jackson, in *Pitts* v. *Hall*, 60 *Ga.* 391, were purely obiter, even if they could be construed to express a contrary view to that above presented.

8. Did the petition state sufficient facts to authorize the writ to issue ? One ground upon which the application bases the right to have the prisoner discharged is that four separate sentences for misdemeanor offenses were pronounced against him on the same day ; and that as he has been in custody a sufficient length of time to discharge the longest one of the four, he must be discharged. It appears that in imposing the sentences the judge provided that each one after the first should begin to run after the expiration of the previous sentences. They were, therefore, not concurrent but cumulative; and the prisoner would not be entitled to his discharge from legal custody until after he had served the aggregate time fixed by the four sentences. In *Fortson* v. *Elbert County*, 117 *Ga.* 149, while it was held that the sentences were concurrent, and that for

this reason the prisoner ought to have been discharged after having served the longest time fixed by any one of them, it was recognized that the rule would be otherwise where the sentences were cumulative, as appears in the present instance.    While the Penal Code, § 1041, relates exclusively to felony cases, we entertain no doubt that the judge has power, under the common law, to impose cumulative sentences in misdemeanor cases.    See 19 Enc. P. & P. 484.

9.  The right to have the prisoner discharged is based on the further ground that he is held in custody, under a sentence of the superior court, in a private chain-gang under the control and management of private individuals, acting for a private corporation. In *Russell* v. *Tatum*, 104 *Ga.* 332, it was held that "convicts can not be worked in chain-gangs controlled by private individuals;" and that where, on the hearing of a habeas corpus proceeding, it appeared that a prisoner was confined in such a chain-gang, it was proper for the judge to remand him to the custody of the authorities of the county in which he was sentenced.

10.  The fact that the allegations which it is claimed show that the custody of the prisoner is unlawful are charged "on information and belief" does not make the petition fatally defective.    It must be borne in mind that the application was by a party other than the prisoner, and by one who, from the nature of the case, was not in a position to state with absolute certainty and definiteness all the facts upon which the prayer for the writ was based. The writ itself is inquisitorial; its very object is to inquire into the cause of the detention, and to ascertain, when the judge has in his possession all the facts, after a response has been made to the writ, whether the detention is in fact illegal.    While the Penal Code, § 1212, provides that there must be "a distinct averment of the alleged illegality in the restraint," and that the "cause or pretense of the restraint" must be stated, it will not do, as shown above, to apply to a proceeding of this character the strict rules applicable to pleadings in suits between parties.    The utmost liberality consistent with a due observance of the forms and substance of legal requirements should be allowed.    The State is interested in seeing that no citizen is illegally deprived of his liberty, and the law is designed to encourage, and make easy and expeditious, inquiry into the cause of an imprisonment, whenever its legality is brought

in question.    It is noticeable that the form given by Mr. Church for an application made by a person in behalf of another, held in custody, charges that " to the best of your petitioner's knowledge and belief" the cause of the restraint is as follows; and that " he is advised by counsel " " and so believes " that the imprisoment is illegal.    Church, Hab. Cor. 875.

11.    There is one other point which, though not made in the record or suggested in the argument, we have thought it proper to notice for the benefit of those who may in the future apply for the writ under similar circumstances as those appearing in the present proceeding.    The petition prayed for the issuance of the writ to the " Georgia Iron and Coal Company, a corporation, . . and to its officers, agents, and employees, who have the charge and custody of the said Wess Simmons."    The writ was directed to the corporation, " and to its officers, agents, and employees."    It was served upon the superintendent of the corporation.    The writ must be directed to the person having the person in custody, whether he be an officer of the law or a private individual.    4 Bacon's Ab. 581 ; 15 Am. & Eng. Enc. L. (2d ed.) 194.    " If this can not readily be determined, it may be addressed to any one countenancing or consenting to the illegal detention or restraint."    Church, Hab. Cor. § 106, p. 167.    We find no precedent in the books, however, for directing the writ to a corporation ; and from the very nature of the case it would seem to be clear that it can not be so directed. See, in this connection, *Hall Machine Co.* v. *Barnes*, 115 *Ga.* 945, 946.    A corporation is an artificial being, an entity; and it is not conceivable how it can restrain the liberty of anybody.    It of course could authorize the detention, and would doubtless be liable in a civil action for so doing.    But how could a judgment ordering a corporation to discharge a person wrongfully held in custody be enforced ?    The corporation could not be attached for contempt, and we do not think that an officer or servant of the corporation could be attached for refusing to obey a writ directed to the corporation.    Restraining another's liberty is necessarily a matter of individual conduct and responsibility, and it would certainly be no defense, on an attachment for contempt against an individual, that the restraint was ordered by a corporation, or even by another individual.    But these views are not of serious moment now; for, applying the rule of liberal construction heretofore referred to, we

think the writ may be treated as directed to the individuals concerned in the illegal restraint of the prisoner. It was directed to the agents of the corporation, and served upon one of such agents, who responded and, presumably, brought the prisoner into court; and hence the irregularity in the address of the writ presented no obstacle to an inquiry into the cause of the restraint. But such a method of addressing a writ is irregular and improper. It should be directed to the individual having the actual physical custody and control of the person detained; and if this can not readily be done, where the application is made by a third party, to some one who is manifestly a party to the detention and aids and abets it.

*Judgment reversed. By five Justices.*