## VINCENT *v.* VINCENT.

No. 10830. OCTOBER 19, 1935.

*John S. Wood,* for plaintiff in error. *J. G. B. Erwin,* contra.

BECK, Presiding Justice. L. S. Vincent, the paternal grandfather of Charles Vincent, a minor child, approximately two years of age, presented to the judge of the superior court of Gordon County the following affidavit:

"Georgia, Gordon County. Personally appeared before me L. S. Vincent, who, being duly sworn by me, says that he is the grand-parent of Charles Vincent, an infant child, and that said child is in the care and control of Imogene Vincent, who is not a proper person to care for said child, and says that he and his wife have been looking after and caring for said child and want to continue the same.                                          L. S. Vincent.

"Sworn to and subscribed before me this July 9th, 1934. C. C. Pittman, J. S. C. C. C."

The judge issued his warrant directing the sheriff of the county to take custody of the minor child and place it in the custody of L. S. Vincent and his wife until the date of the hearing fixed in the warrant. The hearing was continued until March 9, 1935, during which time L. S. Vincent retained custody of the child. Upon the date of the hearing Imogene Vincent moved to dismiss the warrant upon the grounds that there was no petition upon which to base the warrant and order, that there was no prayer for the issuance of the warrant and order, and that the court was without authority in law to issue said warrant and order. Thereupon L. S. Vincent tendered an amendment showing why he claimed he was entitled to the custody and control of the child and why Imogene Vincent had lost her control over the child and should not be awarded the custody; it being alleged that her course of conduct showed that she had become an unfit person to have the care and control of the child, for that she had acquired the vicious habit of drinking whisky and intoxicants, smoking cigarettes, and associating with persons of vicious habits, and that she had become lewd and lascivious in her conduct. There were other allegations showing why the custody of the child should be awarded to petitioner. This amendment concluded with a prayer that the writ of habeas corpus as issued be sustained and confirmed by the court, and that petitioner be awarded permanent custody of the child; and that the amendment be allowed and become a part of the record.

Imogene Vincent excepted to the overruling of the motion to dismiss, to the allowance of the amendment, and to the judgment awarding custody of the child to the defendant in error.

■ The court did not err in allowing the amendment. It will at once be seen that the pleadings were not only informal but

quite irregular. No formal application was filed in the first instance, but merely the affidavit set forth above. But even that affidavit is sufficient to indicate that the affiant sought to take the child from the custody of his mother on the ground that she was not a proper person to care for the child, and also to show that the affiant was seeking to have the care and control and custody of the child. In view of these allegations the court did not err in allowing a more formal petition in the nature of an application for a writ of habeas corpus. The affidavit referred to was at least sufficient as a basis for this formal petition. This conclusion follows necessarily, upon the consideration of the nature of the application, and the fact that upon the order granted when the affidavit was made the child had been brought before the court and was in the custody of the court and its officers. The child having been brought before the court, the court could allow such changes in the substance and form of the pleadings as would make them regular upon the record. In *Broomhead* v. *Chisolm,* 47 *Ga.* 390, it was said : "Every judge whose duty it is to grant the writ of habeas corpus must do so when 'any person shall apply for' it : Code, 3955. The judge of the city court of Atlanta, then, was obliged to grant the writ. The respondent before answering it brought the person held in custody within the city limits, but claimed in his answer that he only brought him in in response to the writ, and therefore the judge had no jurisdiction. What might have been the decision had the respondent declined to bring the prisoner within the city, we do not say. Having brought him before the judge in obedience to the writ, we are not disposed to scan too critically the mode in which he got there, but hold that, being there, the judge had authority to pass such order as the nature of the case required." In *Simmons* v. *Georgia Iron & Coal Co.,* 117 *Ga.* 305 (43 S. E. 780, 61 L. R. A. 739), it was said : "When the writ has been answered, and the prisoner produced, why fritter away his rights with technical niceties and rules of pleading? Let it be granted that the writ ought not to be issued until probable cause is shown, when it is issued, even though improvidently, if it accomplishes its purpose and results in the production of the person detained, why remand to the place whence he came a man deprived of his liberty without any color of legal authority, because, forsooth, the petition is defective in form or even

in substance? The writ of habeas corpus is a writ of right, and its beneficent effects ought not to be dissipated by subtle objections and technical niceties. Of course, if the petition clearly shows on its face that the detention is lawful, there is nothing to investigate. But if it is merely lacking in that fulness which the statute and good pleading require, and shows that a claim is made by the applicant that the detention is illegal, the writ ought not to be quashed after the person detained has been brought into court, but an inquiry into the cause of the detention ought to be instituted."

The rulings stated in headnotes 2, 3, and 4 require no elaboration.

*Judgment affirmed. All the Justices concur, except Russell, C. J., absent because of illness.*