## 5988. McBRIDE, warden, v. GRAEBER.

1. The judge of a city court who, by the law establishing the court, is invested with "power to issue writs of habeas corpus, and to hear and dispose of the same in the same way and with the same power as judges of the superior courts," may grant such a writ directed to any person having another in illegal custody within the territorial limits of the county over which the jurisdiction of his court extends.

2. Where the application for the writ of habeas corpus shows that the person held in custody is detained under a void sentence of the superior court, the fact that it is a sentence of the superior court will not prevent a judge of the city court who has power to grant the writ from taking jurisdiction of the proceeding.

3. Under the law of force in Georgia, the crime of bigamy is committed in the jurisdiction in which the accused enters into the second or bigamous contract of marriage, and not in another jurisdiction, in which he carries on bigamous cohabitation.

DECIDED MAY 3, 1915.

Habeas corpus; from city court of Leesburg—Judge Martin. August 28, 1914.

*T. E. Patterson, J. B. Hoyl,* for plaintiff in error.

*W..H. Burt,* contra.

WADE, J.  J. B. Graeber presented his petition for habeas corpus to the judge of the city court of Leesburg, in Lee county. The petition was brought against J. M. McBride, as warden of the Lee county chain-gang, and alleged that the petitioner was illegally restrained of his liberty, the mode of restraint being by confinement and hard labor on the public roads of Lee county, and the place of his detention being also in that county. He further alleged that he was restrained under and by virtue of an illegal and void sentence, pronounced against him by the superior court of Wayne county, Georgia, at the November term, 1913, thereof, which sentence was based on his plea of guilty to a defective indictment in that court. The indictment, a copy of which is attached to the petition, charges J. B. Graeber with "the offense of bigamy, for that the said J. B. Graeber on the tenth day of June, in the year of our Lord, one thousand nine hundred and twelve, in the county aforesaid, with force and arms, having been legally married to Marie E. O'Connell, the said lawful wife being still and then alive, did marry Bettie Lou Weaver, under the name of Elizabeth Stewart, in the State of Florida, county of Duval, and after having married said Bettie Lou Weaver in said State of

Florida and knowing that his lawful wife, Marie E. Graeber, was still living, did cohabit and live as man and wife with said Bettie Lou Weaver in said county of Wayne, thus having and did knowingly have a plurality of wives at the same time; contrary to the laws of said State," etc. The petitioner complained that Wayne superior court was without jurisdiction to impose sentence upon him on a plea of guilty to a crime which appeared from the indictment itself to have been committed in another State, and that the said superior court imposed its sentence for an act for which no penalty or punishment whatsoever is prescribed under the laws of force in the State of Georgia; that his detention and restraint was therefore illegal, and he prayed the grant of the State's writ of habeas corpus, directed to the said warden, commanding and requiring him to produce the person of the petitioner before the Honorable W. G. Martin, judge of said city court, at such time and place as the court might direct. The writ duly issued, and at the hearing the respondent first entered a demurrer to the petition and moved to dismiss it, upon several grounds, which are in substance as follows: (1-2) Because the city court of Leesburg was without jurisdiction to pass upon the petition, since the petition sought to attack the validity of a judgment of the superior court of Wayne county in a court of inferior jurisdiction. (3) Because the petition sought to have the city court of Leesburg pass upon a criminal statute over which that court had no jurisdiction, to wit: the statute relating to bigamy, which is a felony. (4) Because the city court of Leesburg had no jurisdiction to pass upon the pleadings and judgment in a court of superior jurisdiction in felony cases. The demurrer was overruled, and the respondent filed his answer, denying all the allegations of the petition except as to the nature of the process under which the petitioner was restrained of his liberty, and the mode of that restraint. Upon the indictment attached to the original petition appears a formal waiver of arraignment and a plea of guilty, properly signed.

At the conclusion of the hearing the judge of the city court passed an order discharging the petitioner from further detention by the warden of Lee county chain-gang, on the ground that the detention was under an illegal sentence, based upon a plea of guilty to a void indictment; and further ordered that the petitioner be "committed to the superior court of Wayne county, Georgia, to an-

swer. the offense of adultery and fornication, or such other offense as the grand-jury may find, growing out of the alleged bigamous marriage," and directed that the respondent, J. M. McBride, deliver him "to any sheriff or deputy sheriff of Georgia, who shall deliver him to the jailer of Wayne county, Georgia, to be safely kept until discharged by due process of law." The respondent excepted to this judgment, and brought to this court the questions raised by the petition, the demurrer, and the answer. The judge of the city court, in certifying the bill of exceptions, incorporated therein a recital that the only evidence introduced on the trial consisted of a certified copy of the indictment, with the plea of guilty and other entries thereon, and a like copy of the sentence of the superior court; all of which exactly correspond to the certified copies attached to the petition as exhibits.

1, 2. The first question for determination is the question as to the jurisdiction and power of the judge of the city court of Leesburg to issue a writ of habeas corpus which seeks to release from custody one restrained under and by virtue of a sentence imposed upon him by a superior court of this State, for the commission of an offense cognizable only by that court, and which the city court of Leesburg would have no jurisdiction originally to try. In the case of *Pitts* v. *Hall,* 60 *Ga.* 390, the Supreme Court said: "The ordinary undertook to turn out the defendant by writ of habeas corpus, the superior court reversed the ordinary on certiorari, and this is the judgment sought to be corrected. The ordinary had no right to interfere with the sentence of the superior court. Code, § 4023 [Penal Code of 1910, § 1305]. The process was lawful, and it would be dangerous to let such a court, or any court, interfere with the sentence of any other court superior to itself." This would seem to be an explicit ruling on the point involved, but it will be found, from a careful examination of the decision in that case (and it is so declared by the Supreme Court in *Simmons* v. *Georgia Iron & Coal Co.,* 117 *Ga.* 305-317, 43 S. E. 780, 61 L. R. A. 739), that these remarks of Judge Jackson, touching the danger resulting from the interference by an inferior court with a sentence of a court of superior dignity, were purely obiter. Any doubt which may have existed on this point before that time was definitely removed by the ruling in *Simmons* v. *Georgia Iron & Coal Co.,* supra, in which it is clearly and distinctly held that "The judge of

a city court, the jurisdiction of which extends over the whole of the county in which it is located, has power to grant the writ directed to any person having another in illegal custody within the territorial limits of the county, and to make it returnable to any place within the county, notwithstanding such person may be a non-resident of the county." And again: "The fact that the application may show that the person held in custody is detained under a void sentence of the superior court would not prevent the judge of a city court having power to grant the writ from taking jurisdiction of the proceeding." To attempt to add anything to the learned and interesting discussion of the writ of habeas corpus to be found in the case just referred to would be useless; nor is it necessary for the purposes of this case to refer to what is there said as to whether the sufficiency of a petition for habeas corpus can be tested by demurrer, notwithstanding it seems that a motion may be made to quash such a writ because of insufficient averments in the petition. In the opinion in that case (p. 315) it is said that a city court for Bartow county was created by an act of the legislature giving it jurisdiction over the whole of that county, and "by section 23 of the act it was provided that 'the judge of said city court shall have authority to grant writs of habeas corpus, except when the person detained of his liberty is charged with a capital felony;'" and that "the statutory right of the judge of that court to issue the writ of habeas corpus must be derived solely from this act." The court said further (p. 317): "We are not aware of any difference in rank among the various judges of the State when acting as habeas corpus judges; and we see no reason, in principle, why one such judge presiding in a city court might not discharge a person wrongfully held in custody under a void sentence imposed by the superior court. The sole question to be inquired into is whether the detention is illegal; and if it is, the prisoner ought to be discharged, without regard to who or what was the direct or indirect cause of the detention." The act establishing the city court of Leesburg (Acts 1905, pp. 266-276) provides explicitly, in section 13, "that the judges of said city court shall have power to issue writs of habeas corpus, and to hear and dispose of the same in the same way and with the same power as judges of the superior courts." Also, section 1 of that act declares that the city court of Leesburg shall have civil and criminal jurisdiction "over the whole county of

Lee." These provisions obviously bring this court under the same rule declared by the Supreme Court in reference to the city court of Cartersville.

3. In England it was an offense against the canon law, but not against the common law, to marry a second time during the life of the first husband or wife, or to cohabit under such a marriage. By statute enacted during the reign of James I, bigamy was, however, made a felony when committed within the limits of England or Wales, and many defects therein have been cured by later enactments. "In most of the United States the nature and punishment of bigamy are defined by statutes which are variations of the later English enactments. Bigamy is now an offense in all the States of the Union, though the degree of the crime varies." 4 Am. & Eng. Enc. L. (2d ed.) 36. Generally speaking, "to constitute the offense of bigamy, there must have been a prior valid marriage, coupled with an entering by one of the parties thereto into a second marriage while to his or her knowledge the other party to the prior marriage is alive and such marriage is still undissolved." 5 Cyc. 689-690. In England it now appears that under the existing statutes there may be a conviction of bigamy wherever the guilty person is apprehended or held in custody, without regard to the question where the second marriage took place, though under the earlier statutes there could be no conviction except at the place of the marriage. 4 Am. & Eng. Enc. L. (2d ed.) 39. "Generally in the United States no conviction for bigamy can be had except in the jurisdiction where the bigamous marriage was solemnized;" though by express statute in some of the States the defendant may be tried and convicted where the bigamous cohabitation occurs, even though the marriage took place outside of the State where the indictment was found. State *v.* Sloan, 55 Iowa, 217 (7 N. W. 516) ; Com. *v.* Bradley, 2 Cush. (Mass.) 553; State *v.* Johnson, 12 Minn. 476 (93 Am. D. 241) ; State *v.* Palmer, 18 Vt. 570; 4 Am. & Eng. Enc. L. (2d ed.) 40. "The time when, and the place at which, the prior marriage took place are not material ingredients of the offense, because the second marriage alone is unlawful, the first having nothing criminal in it." 5 Cyc. 693. "The place where the second marriage was performed is material. . . Where, however, the statutes so provide, the place of the second marriage is not important, and it may have been solemnized

elsewhere than within the jurisdiction of the country or State where the charge of bigamy is made." 5 Cyc. 694. See also Cox v. State, 117 Ala. 103 (23 So. 806, 67 Am. St. R. 166, 41 L. R. A. 760). Cohabitation under the second marriage is not requisite, but the crime of bigamy is complete when the second marriage is solemnized. 5 Cyc. 694; 4 Am. & Eng. Enc. L. (2d ed.) 39. "It is now held by all the courts that the word 'marries,' when applied to a subsequent marriage, means going through a form of marriage." 4 Am. & Eng. Enc. L. (2d ed.) 39. "Bigamy is popularly described as the crime of having two wives or two husbands at the same time. To state the matter more accurately, it may be said that the crime of bigamy is committed by the act of marrying while the spouse by a former marriage is still alive and the former marriage is still in force. In some States the statutes have gone further and made punishable the mere act of illegal cohabitation with the second spouse. Under such statutes the gist of the offense may be either the second marriage or the illegal cohabitation. At common law, entering into a second marriage while the first remained undissolved was designated polygamy, but the words bigamy and polygamy are used interchangeably at the present time." 3 R. C. L. 796. The sections of the Penal Code of this State defining this crime are as follows: § 367. "Polygamy, or bigamy, consists in knowingly having a plurality of husbands or wives at the same time." § 368. "If any person being married shall marry another person, the lawful husband or wife being alive, and knowing that such lawful husband or wife is living, such person so offending shall be punished by confinement at labor in the penitentiary for not less than two years nor longer than four years, and the second marriage shall be void." § 370. "If any unmarried man or woman shall knowingly marry the wife or husband of another, such man or woman shall be punished by imprisonment and labor in the penitentiary for not less than one year nor longer than three years."

The defendant in this case pleaded guilty, in the county of Wayne, to an indictment for bigamy, alleged to have been committed by marrying one Bettie Lou Weaver in the State of Florida and county of Duval, and, after having married the said Bettie Lou Weaver in the State of Florida, knowing that his lawful wife was still living, by cohabiting and living as man and wife with the

said Bettie Lou Weaver in the county of Wayne, thus knowingly having a plurality of wives at the same time. It appears, from what we have already said, that in some jurisdictions, cohabiting with a bigamous wife is placed by statute on the same plane as the act of going through a bigamous ceremony of marriage, but no such statute exists in Georgia. It is true that by the common law and the law of this State, a mutual agreement to be husband and wife, made by' parties able to contract, and followed by cohabitation, is recognized as a valid marriage. *Dale* v. *State,* 88 *Ga.* 552 (15 S. E. 287) ; *Smith* v. *Smith,* 84 *Ga.* 440 (11 S. E. 496, 8 L. R. A. 362) ; *Clark* v. *Cassidy,* 64 *Ga.* 662; *Drawdy* v. *Hesters,* 130 *Ga.* 161 (60 S. E. 451, 15 L. R. A. (N. S.) 190). If the indictment had alleged that the defendant contracted such a common-law marriage with his bigamous wife in the county of Wayne, and this allegation had been sustained by proof, a conviction of bigamy possibly might have been warranted under our statutes even though one of the parties was not legally "able to contract," but it is unnecessary to pass upon that question in this case, since the indictment above referred to does not charge that the defendant entered into a common-law marriage within the limits of the county of Wayne, and thereafter cohabited with the person with whom he contracted such a marriage, but charges. that the defendant, while knowing that his lawful wife was still living, did cohabit and live in that county as man and wife with the woman to whom he had been married in the State of Florida. Undoubtedly the defendant, under the allegations of the indictment, could have been convicted under a charge of adultery, or adultery and fornication as the proof may have warranted, but it appears to us clear that the offense of bigamy, as defined by our statutes, was not in any manner charged by the indictment.

It is urged that since there was no demurrer to the indictment, but, on the contrary, the defendant admitted his guilt thereunder and entered his formal plea of guilty, he could not be discharged from the sentence imposed upon him. It is sufficient to say that a plea of guilty of the commission of an act which is not a crime either under the common law or by statute certainly would not authorize the restraint or detention of the person making by his plea the admission that he did the things alleged in the indictment which were not in violation of law. Suppose the defendant had been

indicted for *lèse-majesté*, which is understood to be a recognized crime under the laws of force in Germany, but which, as generally understood, is not an offense under the common law or under the law of Georgia; and suppose further that certain facts constituting the alleged offense were set out in an indictment, and the defendant thereupon waived arraignment and entered his plea of guilty, was sentenced to serve a term in the penitentiary, and was actually restrained of his liberty under the judgment of a competent court; could it be urged for a moment that the writ of habeas corpus would not avail to release him from custody, simply because he had not interposed a demurrer to the indictment, but had entered a plea of guilty to the acts therein alleged? The whole matter depends upon this: no crime under the common law or under the statutes of Georgia relating to bigamy was charged in the indictment, and consequently when the defendant pleaded guilty to the allegations made in the indictment, he did not thereby plead guilty to a commission of a crime.

It appears to be well settled that the venue in such a case, in the absence of a special statute allowing a trial in the county where the defendant is apprehended (State *v.* Sweetsir, 53 Me. 438; State *v.* Griswold, 53 Mo. 181; Reg. *v.* Whiley, 2 Moody, 186, reversing 1 C. & K. 150, 47 E. C. L. 150; Rex *v.* Fraser, 1 Moody, 407; Rex *v.* Gordon, R. & R. 36; Collins *v.* People, 1 Hun (N. Y.), 610, 4 Thomp. & C. (N. Y.) 77), must be laid in the county where the second marriage was celebrated. 5 Cyc. 696. "The basic principle that jurisdiction over crimes is local and that no State can punish for a crime committed in another State applies to prosecutions for bigamy, which must be laid in the jurisdiction where the crime, which is the second marriage, was committed." 3 R. C. L. 797. In the case of *Nelms* v. *State*, 84 *Ga.* 466 (10 S. E. 1087, 20 Am. St. R. 377), it was held that "A married man whose wife is living commits bigamy by marrying another woman, whether he cohabits with her or not, and though he be arrested immediately after the performance of the marriage ceremony. *Consensus non concubitus facit nuptias.*" It is evident that in this jurisdiction, under our statutes defining the crime of bigamy, in which it is definitely stated that one is guilty of this crime who "shall *marry* another person," etc., or shall "knowingly *marry* the wife," etc. (sections 368-370), the actual ceremony or contract of marriage itself is

referred to, whether the marriage be performed with or without pomp and circumstance by a minister of the Gospel, or by an officer of the law authorized to perform the ceremony, or (possibly) by a simple agreement to take each other for husband and wife, followed by cohabitation and constituting a common-law marriage. As was said further in that case, "a man takes a wife when the contract is lawfully made. He takes a wife unlawfully when the contract is unlawfully made, and this unlawful contract the law punishes."

The trial judge did not err in ordering the discharge of the prisoner; and his judgment is                     · *Affirmed.*