76570. EDWARDS v. THE STATE.
(374 SE2d 97)

SOGNIER, Judge.

Boyd Edwards appeals his conviction for the offenses of theft by deception, bigamy and recidivism.

1. Appellant contends the trial court erred by denying his motion for a directed verdict of acquittal on the charge of theft by deception on the general grounds that the State failed to prove the elements of the crime.

"The gravamen of [OCGA § 16-8-3 (a)] lies in obtaining the property of another by intentionally creating a false impression as to an existing fact or past event." *Mathis v. State*, 161 Ga. App. 251 (288 SE2d 317) (1982). Viewing the evidence in the light most favorable to the prosecution, testimony was adduced that appellant, after marrying Louise Flournoy (hereinafter "Flournoy"), obtained at least $55,459 from her over the course of several months by representing to her that he would get her a "double return" on the money by investing it in several companies he allegedly owned. Lieutenant Mike Bradley of the Carrollton Police Department testified that appellant

admitted to him that a back-dated agreement appellant had Flournoy sign after she had given him the money, in which she agreed to provide appellant's company, Edwards Enterprises of Charlotte, North Carolina, with $56,000 in exchange for 20 percent interest on that money as insured by "Global Insurance Co., Inc., bonding agents," contained "mostly fictitious" information. Appellant admitted that the insurance company did not exist, and Lt. Bradley's own investigations revealed that appellant's company did not exist either in Georgia or in North Carolina. Flournoy did not recover the money or receive any return on it.

"The weight of the evidence and credibility of witnesses are questions for the jury. [Cit.] We find the evidence sufficient to meet the standard of proof required by *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) [(1979)]." *Davis v. State*, 180 Ga. App. 299, 300 (1) (349 SE2d 29) (1986).

2. Appellant asserts the trial court erroneously denied his motion for a directed verdict of acquittal on the charge of bigamy on the general grounds, as well as because venue was not proper in Carroll County. At trial, Flournoy testified that she married appellant on September 4, 1985 in Dillard, South Carolina; that they returned that day to her home in Carroll County where appellant spent the night; and that appellant was "home" later on the December day that Lt. Bradley visited her in order to speak to appellant. Lt. Bradley testified that appellant told him that he (appellant) married Ruby Mallet in Marshall, Texas; that Lt. Bradley went to Texas and obtained a certified copy of the marriage license dated August 28, 1985; that after talking to Mallett, Lt. Bradley obtained a certified copy of the annulment decree obtained by Mallett which was not entered until October 7, 1985.

Although appellant argues venue is proper only in South Carolina, the cases supporting this position, see *Pitts v. State*, 147 Ga. 801, 802-803 (2) (95 SE 706) (1918) and *McBride v. Graeber*, 16 Ga. App. 240 (3) (85 SE 86) (1915), were rendered prior to the enactment, in Ga. L. 1968, p. 1249, § 1, of the current statute, OCGA § 16-6-20 (a), which provides: "A person commits the offense of bigamy when he, being married and knowing that his lawful spouse is living, marries another person *or* carries on a bigamous cohabitation with another person." (Emphasis supplied.) Thus, *Pitts* and *McBride*, supra, construing earlier bigamy statutes, no longer have the force of law and we agree with the State that under OCGA § 16-6-20 (a), venue is proper for the offense of bigamy in the county where a person, being married and knowing the lawful spouse is living, carries on a bigamous cohabitation with another person. We hold that the evidence presented by the State was sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt both that appellant had committed the

offense of bigamy and that venue for the prosecution properly lay in Carroll County. See generally *Jackson v. Virginia*, supra; *Felton v. State*, 184 Ga. App. 570, 571 (1) (362 SE2d 107) (1987).

3. Regarding appellant's general grounds objection to his conviction of recidivism, we find the evidence of appellant's felony convictions in Virginia, Arizona, and Alabama sufficient to meet the standard of proof required by *Jackson*, supra, so as to support appellant's conviction under OCGA § 17-10-7.

4. Appellant contends he was denied the right to a thorough voir dire of prospective jurors when the trial court sustained the State's objection to two voir dire questions requested by appellant. Appellant argues the questions had a direct bearing on testimony to be presented during trial, asserting that his Question No. 4 related to evidence that appellant was being sued for divorce by inquiring whether the jurors felt an individual should be subject to criminal prosecution and civil liability for the same set of circumstances, and that his Question No. 5 related to appellant's defense of mistake of fact by inquiring whether the jurors felt that "a person should be convicted of a crime and face the possibility of a prison sentence due to a mistake in belief of facts, which if the facts had been as the person thought, there would have been no crime?"

"The purpose of voir dire is the ascertainment of the impartiality of jurors, their ability to treat the cause on the merits with objectivity and freedom from bias and prior inclination. [Cit.]" *Mathis v. State*, 176 Ga. App. 362, 363 (336 SE2d 299) (1985). " 'Conduct of voir dire is within the discretion of the trial court and the court's rulings are presumed proper in the absence of some manifest abuse of discretion. [Cit.]' [Cit.]" *Ridgeway v. State*, 174 Ga. App. 663, 665 (3) (330 SE2d 916) (1985). Since Question No. 4 dealt with matters beyond the specific case and Question No. 5 required a response from a juror which might amount to a prejudgment of the case, there was no abuse of the trial court's discretion in refusing these questions. See generally *Curtis v. State*, 224 Ga. 870, 871 (2) (165 SE2d 150) (1968); *Bowens v. State*, 116 Ga. App. 577, 578-580 (4) and (6) (158 SE2d 420) (1967).

5. Appellant asserts the trial court erred by overruling his motion for a continuance, thereby denying him his right to be present during the course of the trial. The transcript reveals that after trial commenced on October 20, 1986, appellant complained of chest pains and on the recommendation of appellant's physician, the trial court continued the trial until the following day. When court reconvened, appellant was not present and the court was informed appellant had missed his doctor's appointment scheduled for that morning; that appellant's hotel room had been "cleaned out"; and that appellant's attorney had not heard from him since the previous evening and did not know where he was. The motion for continuance made by appel-

lant's counsel was denied by the trial court.

This case is factually indistinguishable from *Byrd v. Ricketts*, 233 Ga. 779 (213 SE2d 610) (1975), in which it was held that "[c]onfrontation rights are personal to the accused and are waived when the accused is free on bail and voluntarily absents himself from the trial. [Cits.]" Id. at 780. *Pollard v. State*, 175 Ga. App. 269 (333 SE2d 152) (1985), cited by appellant, is distinguishable from the case sub judice in that the defendant therein voluntarily absented himself prior to trial before jeopardy attached. We find no error in the trial court's denial of the motion for continuance.

6. Appellant contends the trial court erred by admitting statements appellant made to the police because the statements were elicited from appellant with a "hope of benefit" that the charges against appellant would be prosecuted in a federal district court rather than a Georgia superior court. Even if we were to accept appellant's contention that it was not he who first raised the idea of federal court prosecution (see *Dickey v. State*, 157 Ga. App. 13, 14 (1) (276 SE2d 75) (1981)), "we conclude that the benefit involved was not 'hope of lighter punishment (induced by one other than the defendant)' [cit.], but was a collateral benefit which does not render a confession inadmissible. OCGA § 24-3-51 . . . ." *Patrick v. State*, 169 Ga. App. 302 (1) (312 SE2d 385) (1983). Compare *Johnson v. State*, 238 Ga. 27-28 (1) (230 SE2d 849) (1976). Appellant's statements were properly submitted to the jury.

7. At trial, appellant's counsel made a hearsay objection to testimony by Hoyt Johnson that he had asked the Carrollton Police Department to investigate appellant after learning from his (Johnson's) sister that appellant was trying to get money from their mother. After the trial court allowed the evidence on the basis that it explained conduct, see OCGA § 24-3-2, appellant's counsel moved to strike the testimony because it was not based on Johnson's personal knowledge, and requested curative instructions to that effect. The trial court instructed the jury that "any evidence this witness had that was related by other witnesses is not admitted for the purposes of showing the truth, or the untruth, of that information but it is only to show the conduct of this witness in contacting the police authorities of this county; and, the evidence is not to be considered as the truth of whether or not it's true or not true." Appellant's counsel afterwards stated that he understood the curative instructions, "but I feel the damage has still been done."

Appellant contends the trial court erred by admitting Johnson's testimony and denying his motion for a mistrial, arguing that the testimony unduly prejudiced the jury and placed appellant's character into evidence. However, no objection was made to the testimony on this basis and it thus presents no question for this court's considera-

tion. See *House v. State*, 227 Ga. 257 (1) (181 SE2d 31) (1971). As to the hearsay objection based on the witness's lack of personal knowledge, OCGA § 24-3-2 "permits certain evidence which would otherwise be hearsay so long as it is admitted for the limited purpose of explaining conduct or ascertaining motives." *Anderson v. State*, 252 Ga. 103, 104 (312 SE2d 113) (1984). Although it could be argued that the admission of this evidence pursuant to OCGA § 24-3-2 was improper under *Momon v. State*, 249 Ga. 865, 867 (294 SE2d 482) (1982) and *Teague v. State*, 252 Ga. 534, 536 (314 SE2d 910) (1984), the evidence was not challenged on this ground and thus we cannot review that issue here. *Mullins v. State*, 176 Ga. App. 439, 440 (336 SE2d 343) (1985).

8. We find no reversible error in the trial court's charge to the jury on the issue of flight. Flournoy testified that after telling appellant that Lt. Bradley was looking for him, appellant became very nervous, upset and started crying, asked her about a back way out of Carrollton, and left town within an hour. Further, there was appellant's unexplained disappearance during the trial of this case. We find this to be sufficient evidence to authorize the jury instruction on flight. See *Chester v. State*, 169 Ga. App. 854, 855 (315 SE2d 56) (1984).

9. After the jury had retired to the jury room, the jurors sent a message to the trial judge inquiring whether they could recommend that the future and present assets of appellant be awarded to Louise Flournoy Edwards if appellant was found guilty. The trial court replied with a message stating that the jury could make such a recommendation but that the sentencing judge was not bound thereby. Upon receipt of the response, the jury returned with their verdict in the case. No objection was made to the exchange and when appellant's counsel requested that the trial court poll the jury regarding their feelings in response to the trial court's message in order to determine if the exchange unduly influenced the jury in their verdict, the trial court denied the request.

We find no merit in appellant's final enumeration in which he asserts this refusal constituted reversible error in that it denied him the opportunity to determine what grounds, if any, were available to him for a request of mistrial due to the influence of the exchange. Even assuming, arguendo, the trial court's response to the jury was incorrect or could have impermissibly influenced the jury's verdict, appellant's remedy was to object to the response and request curative instructions, not to request *after* the verdict was rendered that the jury be polled to determine what harm may have been done. No objection having been made to the communication between trial judge and jury, no error is presented for this court's review. See generally *Hill v. State*, 183 Ga. App. 654, 657 (4) (360 SE2d 4) (1987).

*Judgment affirmed. Deen, P. J., and Carley, J., concur.*

DECIDED SEPTEMBER 9, 1988 —
REHEARING DENIED OCTOBER 4, 1988.

*E. Gordon Staples, Jr.*, for appellant.
*William G. Hamrick, Jr.*, District Attorney, *Agnes McCabe*, Assistant District Attorney, for appellee.