## STEPHENS *v.* HENDERSON, marshal.

1. An ordinance enacted by the Mayor and Aldermen of Cartersville in 1887, providing for the inspection of all domestic wines sold in that city, fixing the fees of the inspector, and prescribing penalties for the violation of the ordinance, was not invalid as contravening the general domestic wine act of 1877. It furnished sufficient foundation for an amending ordinance passed in 1903, which was also valid.

2. Any city or town where the sale of domestic wines has not been prohibited by a special act or the local-option law may regulate the sale of such wines within its limits, provide penalties for a violation of such regulations, and impose a tax upon each place where such wines are sold. This, however, is not applicable to sales of wine made from grapes or berries grown on the land of the seller, or upon land leased or rented by him, unless such person establishes a place of business to make such sales, or engages regularly in the business of selling same within the territorial limits of such city or town.

Argued April 23,— Decided May 12, 1904.

Habeas corpus. Before Judge Foute. City court of Cartersville. February 23, 1904.

*J. B. Conyers*, for plaintiff. *T. C. Milner*, for defendant.

CANDLER, J. On July 5, 1887, the Mayor and Aldermen of the City of Cartersville passed an ordinance creating the office of inspector of domestic wines. It was made the duty of this officer to inspect all wines offered for sale in the City of Cartersville, "and see that said wines are pure and unadulterated and not injurious to health, and in merchantable condition." It was also provided that all persons offering wines for sale in the city should first notify the inspector and have such wines examined in accordance with the terms of the ordinance. The ordinance also fixed the fees of the inspector and prescribed penalties for the violation of its provisions. On November 5, 1903, this ordinance was amended by inserting therein a requirement that all persons offering domestic wines for sale should register their names in a book to be kept by the city for that purpose, changing the fee to be paid the inspector, and providing for a license tax to be required of all persons, firms, or corporations who should "establish a place of business for the purpose of selling domestic wines, or otherwise engage regularly in the business of selling domestic wines within the territorial limits of the said City of Cartersville." Stephens was arrested on a warrant charging him with violating the amendatory ordinance in selling wines without first registering and paying the special tax imposed by the city and the inspection fees required by law, and also in establishing a place of business for selling domestic wines in contravention of the ordinance of November 5, 1903. He sued out a writ of habeas corpus, alleging that his detention was illegal, because (1) the mayor and aldermen had no legal power to adopt the ordinance of July 5, 1887, and hence

that ordinance was not the subject-matter of the amendment of November 5, 1903; (2) petitioner is specially exempted, by the act of 1895 of the General Assembly, from the operation of said act as a manufacturer, unless he established a regular place of business for selling domestic wines. The writ was heard by the judge of the city court of Cartersville, who passed an order denying the prayers of the petition and remanding the petitioner to the custody of the city authorities. Stephens excepted.

It will be seen that the only question for our decision is as to the constitutionality of the two ordinances of the City of Cartersville, to which reference has been made; for only by the attack on their validity is the legality of the petitioner's detention called in question and room given for the operation of the writ of habeas corpus. We will not consider the point made by the plaintiff in error, that by the terms of the act of 1895 (Pol. Code, § 757) he is exempted from the operation of the municipal ordinances of the City of Cartersville. That is a matter of defense in the municipal court, and involves questions of fact, which can only be determined on a trial of the case, and does not in any way affect the legality of the applicant's detention. The ordinances themselves, on their face, are in no way in conflict with the act mentioned, and the petitioner was arrested on a warrant charging him with a violation of their provisions. If, as a matter of fact, he is one of a class of citizens who are by general statute exempted from the operation of the ordinances in question, he must show it on his trial in the municipal court. It is not the function of the writ of habeas corpus, however, to determine the guilt or innocence of one accused of crime. Its only purpose is to ascertain the legality of the detention, and that is a matter to which the point now under discussion does not go. The principal contention of counsel for the plaintiff in error is that the original ordinance passed in 1887 was invalid as contravening the general domestic-wine act of 1877; and from this it is argued that the amendment of 1903 was void because it purported to amend something which in legal contemplation had no existence. We are satisfied that this contention is without merit. The original ordinance did not prohibt the sale of domestic wines; it merely provided for their inspection as a safeguard against adulterations. It was clearly within the power of the municipal authorities, under the Political Code, § 1600, to en-

act such an ordinance, without further legislative authority. Pure food laws to protect its citizens against vicious and fraudulent adulteration of foodstuffs which might otherwise be foisted upon them by unscrupulous merchants may be enacted as police regulations. The domestic-wine act of 1877 guaranteed the right of the manufacturer to sell, in quantities not less than one quart, wine made from grapes grown on his land; but it did not take away from the cities of the State the authority to prescribe that such wines when sold shall be free from injurious adulterations. This being true, the ordinance passed in 1887 was legal and valid, and furnished a sufficient foundation for the amending ordinance of 1903. The provisions of that amendment were likewise valid and legal. For the most part it carried out the scheme of inspection and prevention of adulteration, inaugurated by the ordinance of 1887. The only feature of the amendment not contemplated by the original ordinance was a provision for a license tax on places where domestic wines are sold; and this was in entire harmony with section 756 of the Political Code. We do not hesitate to hold that from nothing that appears in the record does it appear that the detention of the petitioner was illegal, and consequently that the court below did not err in refusing the prayers of the petition.      *Judgment affirmed.*    *All the Justices concur.*