1. No person shall be discharged upon a writ of habeas corpus "where he is imprisoned under lawful process issued from a court of competent jurisdiction, unless in cases where bail is allowed and proper bail is tendered," nor "in any other case where it appears that the detention is authorized by law." Code, § 50-116 (1, 6).
2. On the trial of an application for habeas corpus for the release of one charged with crime, the only question to be determined is the legality of the detention. It is not the function of the writ of habeas corpus "to determine the guilt or innocence of one accused of crime." Stephens v. Henderson, 120 Ga. 218, 220 (47 S.E. 498). See also State v. Asselin, T. U. P. Charlton, 184 (Ga. Rep. Ann.
66); Young v. Fain, 121 Ga. 737 (49 S.E. 731); Weatherly v. Beavers, 139 Ga. 122 (76 S.E. 853); Peebles v. Mangum, 142 Ga. 699, 701 (83 S.E. 522); Sanders v. Paschal, 186 Ga. 837 (199 S.E. 153).
3. It appeared in this case that the applicant for the writ was arrested on May 19, 1947, under two warrants, one for a misdemeanor, and one for a felony as described in the Code, § 5-9914 (failure to pay for agricultural products, cattle, hogs and other products purchased on cash sale): *Page 83 
that on May 20, an application for the writ of habeas corpus was presented to the judge of the superior court of the county to which the warrants were returnable; and that at a hearing on May 24, the judge passed an order releasing the applicant from custody. To this judgment the respondent sheriff excepted. Under the rulings made above, the applicant could not properly be released from custody under either of such warrants merely upon evidence relating to guilt or innocence.
4. An arresting officer has no authority to accept bond from one arrested under a warrant for a felony, as described in the Code, § 5-9914, but should return the party arrested to the county in which the crime was alleged to have been committed, for examination before a judicial officer of that county and the fixing of bail by such officer in case of commitment. Code, §§ 27-209, 27-401, 27-407, 27-418, 27-901, 27-902; Lamb v. Dillard, 94 Ga. 206 (21 S.E. 463); Weatherly
v. Beavers, 139 Ga. 122 (supra); Burrow v. Southern Railway Co., 139 Ga. 733 (78 S.E. 125).
(a) As to the felony warrant, it appears that the applicant did not seek a commitment trial or the fixing of bond by any judicial officer, but sought absolute release and discharge on the ground that his detention was unlawful.
(b) While sheriffs and constables are authorized in misdemeanor cases to accept bail in such reasonable amounts as may be fair and just, provided the sureties "tendered and offered are approved by a sheriff of any county" (Code, § 27-902), the evidence did not show that any sureties were tendered or offered even as to the misdemeanor warrant. Furthermore, the mere failure or refusal of such an officer to accept bail would not authorize release without bail, where the detention is otherwise lawful.
5. Nor was the detention of the applicant shown to be unlawful by the additional fact that he had been arrested under a previous warrant and discharged therefrom on habeas corpus, it appearing that such previous warrant was issued for an offense different from that stated in either the misdemeanor or the felony warrant under which he was last arrested. For this reason, regardless of other questions, such previous discharge did not render the detention of the applicant under either of the last-mentioned warrants unlawful.
(a) The present case is distinguished by its facts from Perry
v. McLendon, 62 Ga. 598, Simmons v. Georgia Iron Coal Co., 117 Ga. 305 (43 S.E. 780, 61 L.R.A. 739), and Day
v. Smith, 172 Ga. 467 (157 S.E. 639), and nothing was held in either of those cases contrary to any of the rulings made in the instant case.
6. Under the preceding rulings as applied to the pleadings and the evidence, the judge erred in releasing and discharging the applicant. In this view, it is unnecessary to pass on the assignment of error complaining of a ruling admitting in evidence a certified copy of the previous habeas corpus proceedings, since the result would be the same, with or without this evidence.
Judgment reversed. All the Justices concur, except Head, J., who dissents, and Wyatt, J., who took no part in the consideration or decision of this case. *Page 84 
The exception is to an order releasing and discharging the applicant in a habeas corpus proceeding. Three criminal warrants were referred to in the evidence, all having been sworn out by H. T. Troup Jr. against W. R. Sexton, and issued by G. G. Meeks, a justice of the peace of Irwin County Georgia: (1) Warrant dated March 13, 1947, for cheating and swindling, based on a check for $1350; (2) warrant dated May 15, 1947, for the "offense of cheating and swindling, uttering a worthless check on Citizens Bank of Americus, Georgia, on the 3rd day of August, 1946;" (3) warrant dated May 15, 1947, for the "offense of a felony as described in the Code, section 5-9914 on or about 13th day of November, 1946." Only the two last-mentioned warrants are directly involved in the instant case, the applicant *Page 87 
having been previously released from arrest under the warrant first mentioned.
The Code section referred to in the felony warrant provides: "Any person engaged, either on his own account or for others, in the business of buying cotton, corn, rice, crude turpentine, spirits of turpentine, rosin, pitch, tar, cattle, hogs, sheep, goats, horses, pecans, peaches, apples, watermelons, cantaloupes, and mules, or other products or chattels sold by planters and commission merchants on cash sale, who shall buy such articles on sale from a planter or commission merchant for cash, and shall fail or refuse to pay for, and shall make way with or dispose of the same before he shall have paid therefor, shall be imprisoned in the penitentiary for not less than one year, nor more than five years." Code, § 5-9914, as amended by Ga. L. 1941, p. 337.
The present case comes to this court solely by a certified bill of exceptions, in which the following facts appear: On May 20, 1947, W. R. Sexton, through his attorney, presented to Honorable R. Eve, Judge of the Superior Court of Irwin County, a petition for the writ of habeas corpus, naming as respondent Tillman Paulk, Sheriff of Irwin County. The petition alleged: 3. The cause or pretense of restraint is under a certain warrant of arrest issued in Irwin County by a justice of the peace. 4. Said restraint of W. R. Sexton "is illegal, in that the offense on which the warrant was issued is bailable under the Constitution of this State defining bailable offenses, and said W. R. Sexton has been twice arrested on the same charge as that named in the warrant, and has been once removed to Irwin County where restitution was made on the charge and the warrant withdrawn; that on May 10, 1947, the said W. R. Sexton was discharged on a writ of habeas corpus by the Court of Ordinary of Harris County, Georgia; and the said W. R. Sexton was arrested by agents of the Georgia Bureau of Investigation on May 19, 1947, and removed to Atlanta, Georgia, and lodged in Fulton Tower without an opportunity to give bail on the said offense although bail was offered to the said agents of the Georgia Bureau of Investigation."
The judge passed an order requiring the defendant sheriff to produce the body of the applicant, together with the cause of his detention, on May 21, 1947.
The respondent filed an answer, admitting detention of the applicant, *Page 88 
but denying the alleged illegality, the response being in part as follows:
"6. This respondent shows that he is holding said defendant under a warrant issued by the Honorable G. G. Meeks, Justice of the Peace of the 1529th District, G. M., of Irwin County, Georgia, in which the said W. R. Sexton . . . is charged with the offense of a felony; and that he is also holding said W. R. Sexton under a warrant issued by" the same justice of the peace, "which charges the said W. R. Sexton with the offense of a misdemeanor.
"7. That said petitioner has not offered to make bail to this respondent, and said petitioner has not been denied the right to make bail, but on the other hand defendant has been at all times ready and willing to take said petitioner before a committal magistrate so that bond can be assessed, but immediately after the incarceration in the common jail of said petitioner by respondent . . this petition for habeas corpus was sued out, and therefore this respondent has had no opportunity to have bail assessed."
The hearing was held on May 24, 1947. It is recited in the bill of exceptions: "On said trial a stipulation was entered into between the parties that a return has been duly filed by the respondent . . showing that Mr. Sexton was in court in response to a writ of habeas corpus directed to Tillman Paulk, Sheriff of Irwin County, Georgia, and that such return shows that said sheriff is holding Mr. W. R. Sexton on a warrant sworn out on May 15, 1947 before G. G. Meeks, justice of the peace, by H. T. Troup Jr., accusing W. R. Sexton of a felony. F. W. New, plaintiff's counsel, stated in his place that this man was arrested on May 19, 1947 in Harris County by the Georgia Bureau of Investigation and carried to Fulton Tower, where he was held until May 20, 1947, and that attempt was made to tender bail to the arresting officers, such bail being declined."
On the hearing, the applicant introduced as witnesses in his own behalf H. T. Troup Jr., the prosecutor, Tillman Paulk, Sheriff of Irwin County, and H. V. Grantham, Deputy Sheriff. The applicant also testified, and introduced certain documentary evidence. It appeared from the evidence that respondent was holding the applicant under two warrants dated May 15, 1947, *Page 89 
one for a misdemeanor and the other for a felony, as already described. The evidence also showed that Sexton resided in Harris County, but operated an abattoir in Americus. The warrant from which he was previously released on habeas corpus in Harris County was issued on March 13, 1947, being the warrant first mentioned in this statement.
It is deemed sufficient to set forth in detail only a portion of the testimony, as follows: H. T. Troup Jr., who swore out the warrants, testified that he had known Sexton (the applicant) about three years and had done $75,000 to $100,000 business with him; that in July, 1946, he sold to Sexton live stock to the value of more than $7000; that he drew a draft on him for the amount, and upon finding that the draft was "coming back" went to see Sexton and took from him post-dated checks for the amount of the draft. Among these checks was one dated July 25, 1946, for $2071.40, and one dated August 3, 1946, for $2907.91. Payment of each was refused on account of insufficient funds, although the check dated July 25 was thereafter paid in full. In November, 1946, Troup again sold livestock to Sexton, drawing a draft on him for $825.63, which draft was several times returned unpaid, and on December 14 he drew another one for the same amount in lieu of the previous one. In February, 1947, Troup sold to Sexton other livestock to the amount of about $1300. Troup further testified: "I did on March 13th [1947] have Mr. Sexton arrested at Columbus, Ga., on a warrant based on a check for $1350. At that time he was removed to Ocilla and placed in jail." At this time, according to Troup's testimony, Sexton owed him, in addition to the $1350 check, the $825.63 draft, and a balance of $863 on the check dated August 3, 1946, both of which have been referred to, the check for $2071.40 dated July 25, 1946, having been paid by that time. Sexton was brought from the jail in Ocilla to the office of Troup's attorney, and there paid to Troup, partly in cash and partly in personal property, the sum of $1291 for credit on the $1350 check, and gave him a note for $1703, secured by a mortgage on the abattoir of Sexton in Americus; the $1703 representing all that was then due by Sexton to Troup.
In the early part of May, 1947, Sexton was again arrested, this time in Harris County, on the same warrant on which he *Page 90 
had been arrested in Columbus. On May 10, he was released on habeas corpus proceedings by the Ordinary of Harris County.
Thereafter, on May 15, 1947, Troup swore out the two warrants against Sexton, designated in the beginning of this statement as (2) and (3). Troup further testified: "I saw Mr. Sexton in Hamilton, Georgia, and he was there discharged on a writ of habeas corpus. I then returned to Ocilla and swore to facts upon which this [felony] warrant is based. I didn't tell the sheriff to do anything with the warrant — I went up to Judge Meeks' office and took out the warrant and left it in Judge Meeks' office. . . I did deliver in November of last year a shipment of livestock in Irwin County, Georgia, to Mr. Sexton, amounting to this $800 and some odd dollars. He did not pay me for it at that time. I drew a draft on him for it. I understood that it was a cash transaction. I have never been paid that draft, and it is due. That is the basis of this warrant I took out before Judge Meeks. . . He gave me a promissory note on it. . . That was after he had gotten the livestock. . . I would not have issued this warrant if Mr. Sexton had paid the mortgage and note on time. I was hoping Mr. Sexton wouldn't beat me." O. "Did you take it on hope, Mr. Troup?" A. "I take them on anything, sir. I did not think in November that Mr. Sexton meant to beat me. He said he gave me all he had. Yes, he volunteered the information that these were all his assets and he gave them to me without any argument."
The defendant sheriff identified the two warrants dated May 15, 1947, which had been introduced in evidence. He testified that bail had never been tendered to him on any of these charges, that bail had never been offered to him by anyone on behalf of Mr. Sexton, and that the latter had never asked for a committal trial.
The warrant dated March 13, on which the arrests were made in Columbus and again in Harris County, was not introduced. Apparently, it had not been returned from Harris County, but as shown above it was "based on a check for $1350," and Grantham, the deputy sheriff, referred to it as a "warrant for cheating and swindling — I think the warrant read cheating and swindling."
It does not expressly appear in what county or counties the offenses charged were alleged to have been committed, the warrants *Page 91 
themselves not having been copied in full in the bill of exceptions, but in all the proceedings, including the briefs of counsel as filed in this court, the case has been treated as though the offenses were alleged to have been committed in Irwin County.
Grantham further testified: "I got the felony warrant in this case and the cheating and swindling warrant in this case on the date that's on there — the date that they were taken out. I taken them and went to Mr. Collins and I asked him if they were all right papers, if they were legal and all right, and he said they were, and Judge Meeks turned the warrants over to me and I picked him up. I taken the warrants and got Mr. Baker, who is with the G. B. I., last Monday morning and we went to Atlanta and went to Mr. Bagley's office. Mr. Bagley is Director of the Georgia Bureau of Investigation, and I turned them over to him and he said they had to make a trip in an adjoining county on a little matter and while they were down there, they would get him and we stayed there and he had him brought to the Tower. . . They carried him from Harris County. . . I did not make any attempt to get him that night and return him to Ocilla. They told us they would probably be late in the night getting back from down there — that they had some other matter they were checking on, too. They told me the next morning it was about eight or eight-thirty when they reached Atlanta. I got to the office about ten-thirty or eleven. It was about eleven o'clock when we left the Tower with Mr. Sexton. I then returned him to Ocilla and placed him in jail under both warrants. No attempt has been made to withdraw that warrant that I know of. It is still operative. . . I do not know whether or not an attempt was made to give bond to the G. B. I. agent in Atlanta and in Hamilton. . I told them he would have to make a bond, and if he was going to give an appearance bond the signers would have to be from Irwin County — the bond would have to be from Irwin County. I did not mention what amount. . . Nobody has ever tendered me bond for the man. . . He has never asked me for a bond. . . I have never had bond tendered me on any of these warrants. There has been no order of a committal court refusing bond. There has never been any order of a committal court setting any bond on this warrant."
The arrest having been made on May 19, the petition for the *Page 92 
writ of habeas corpus was presented by Sexton's attorney on May 20, after deputy sheriff Grantham had returned to Ocilla with Sexton and placed him in jail.
W. R. Sexton, the applicant, testified: "I have bought livestock from Mr. Troup before now. In the last three years, I expect I have bought $250,000 worth from him — I think I can produce that many drafts. We had a regular routine — I would buy the stuff and give him drafts and give him post-dated checks — he would tell me to take these cattle and use them if you can and pay for them later. That check of August 3rd, 1946, was part payment for a car of cows and a carload of hogs. . . That $1703 represents the vestiges of the open account and everything I owed him, after I paid the $1293 and something. That note and mortgage was given while I was under arrest and after I was carried to Judge Collins' office. . . I have never given bond in any of these cases. I asked in Atlanta about a bond, and they said they didn't know what the bond would be. I didn't ask the G. B. I.; I asked Mr. Grantham in front of the jailer right there. I just asked him about that. I had Roy House, a professional bondsman there ready to make bond for me. I don't reckon Mr. Grantham knew anything about it."
An unpaid draft and two unpaid checks were introduced; also book entries appearing on a loose-leaf ledger kept by Sexton, and showing payments to Troup. There was no dispute between them as to the balance due by the former to the latter, to wit: $1703. The applicant also introduced a certified copy of all the proceedings relating to a habeas corpus proceeding brought on behalf of W. R. Sexton against M. D. Hadley, Sheriff of Harris County, Georgia, before J. B. Peavy, Ordinary of that county. The petition for habeas corpus in that case alleged that the applicant was restrained under a warrant issued in Irwin County by a justice of the peace; that said restraint is illegal, in that the offense is bailable, and the respondent is denying bail to the applicant by requiring a bond of $2000 in cash or a surety bond of $3000 with a co-signer in Irwin County; and although the applicant has tendered and now tenders a recognizance bond in any reasonable amount with a good and solvent surety in Harris County, he is denied the privilege of giving such good and solvent bond. Also that said restraint is further illegal, in that the respondent *Page 93 
is holding the applicant under detention pending notification to Tillman Paulk, Sheriff of Irwin County, and fails and refuses to liberate the applicant pending the arrival of said Paulk. Said unreasonable requirement of a surety bond and the excessive amount of a cash bond required by the said respondent are a denial of bail bond under the Constitution of Georgia. The warrant under which the respondent holds the applicant had been executed in March, 1947, and the applicant was transported to Irwin County on the said warrant and there made restitution for the charge on which the warrant is based, and said warrant is therefore null and void, although it bears no return of Tillman Paulk, who executed it in 1947.
The petition was amended by adding, as "parties defendant, H. T. Troup Jr. and H. V. Grantham, Deputy Sheriff of Irwin County, Georgia."
It does not appear what response the arresting officer in Harris County made to the petition, nor what evidence was introduced upon the hearing, but the record shows that on May 10 the ordinary passed an order finding the allegations of the petition to be true and releasing Sexton from custody.
In a bill of exceptions brought by the respondent Paulk, sheriff, excepting to the order of Judge Eve, error is assigned: (1) on the admission in evidence of the certified copy of the Harris County habeas corpus proceedings, as next above set forth, over his objections that these proceedings were irrelevant and immaterial, illustrating no issue in the case; and (2) on the judgment dismissing the applicant from custody on the petition as presented to Judge Eve, as first above set forth.